We'll hear argument next in Case 09-1498, United States v. Tinklenberg. Mr. Roberts. Thank you. Mr. Chief Justice, and may it please the Court, to accommodate important pretrial proceedings, the Speedy Trial Act contains several automatic exclusions from its deadline for commencing trial. This case concerns the exclusion for pretrial motions, which excludes the period of delay resulting from any pretrial motion from the filing of the motion through the conclusion of the hearing on or other prompt disposition of such motion. For more than 30 years, the courts of appeals had uniformly held that the exclusion applies automatically upon the filing of any motion, regardless of its effect on the trial schedule. The Court below correctly rejected that established rule, which accords with this Court's decision, is clear and easy to administer, and has worked well for over three decades. The Court's cases construing the exclusion, Henderson and Bloat, support the established rule. They make clear that the exclusion applies automatically once a motion is filed without any need for district court findings. Henderson and Bloat cannot be squared with the approach of Respondent and the Court below. Well, all that might be true. On the other hand, the statute does say delay resulting, and under your approach, the time would be excluded even if delay does not result. No, Your Honor. Delay refers to the interval of time from the filing of the motion through its disposition during which the speedy trial act deadline is told. We know that delay has the meaning of the interval of time between two events. And we know it has that meaning in the statute here, because subsection D tells us so, it defines the period of excludable delay resulting from the motion as the time from the filing through the disposition of the motion. Respondent's definition. Kennedy, but the Chief Justice says only if it's a, it's really a circular argument, only if it results in a delay. Suppose it doesn't result in a delay. That's assuming that delay is referring to delay of the trial, to a postponement in the trial. But delay can't have that meaning, because if it has that, if that meaning is inconsistent with subsection D of the statute's exclusion of the time of saying that delay is the time from the filing of the motion through the disposition of the motion, because the statute excludes periods of delay, and if delay meant postponement of the trial, then the excluded period would be the time during which trial is postponed. But that period is often significantly shorter or longer than the time from the filing of the motion to the disposition. And in Henderson and Bloat, that doesn't that prove the point that I think was the concern of the Chief Justice's question, that in some cases the delay, there's a delay that results, and in other cases there isn't? But, Your Honor, the statute excludes the period of delay, and then it says the period of delay is the time from the filing through the disposition. If delay means postponement of the trial, then all that's excluded by the statute in the first part is the time during which trial is postponed. But that doesn't match up with subsection D, because that period is not necessarily the period from the filing through the disposition. If I could give you an example. Say a motion is filed 14 days before trial could begin, and the motion takes 16 days to resolve. Trial is postponed only by 2 days. And so if delay means the postponement of trial, then the period of delay should be 2 days. But the statute says that the delay and the excludable time is the time from the filing through the disposition, which is 16 days, and that's what this Court held in Henderson and Bloat, that that's the exact time. So if you adopt a definition of delay for the first part as a triggering mechanism that's the postponement of trial, that doesn't line up with the rest of the statute. In addition, that would be a totally unworkable rule, because whether time is excludable would turn on a complex and often uncertain analysis of whether the motion would or could delay when trial would begin. And it's often going to be difficult or impossible to make that determination at the time that the motion is filed. Ginsburg. Mr. Palmas, is there anything to indicate that what Congress might have had in mind is that in criminal cases, inevitably, there are going to be motions. And so the trial judge is likely to set the trial date for after that period runs. Palmas. Yes, Your Honor. Sometimes judges might take motions into account in setting the trial date, and other times they might not take the motions into account. So a rule that said the exclusion only applies if the judge moves the trial date in response to the motion would lead to arbitrary results. It would mean basically that whether time was excludable depended on whether the judge took the motions into account when it set the trial date initially or whether the judge correctly estimated the amount of time. And also, sometimes motions may be filed when no trial date is set. So the rule would be totally unworkable in that situation. And Respondent, in one of his formulations for what the test might be, suggests that a motion wouldn't create excludable delay unless it would postpone the hypothetical earliest date on which trial could otherwise begin. That's just a totally unworkable rule, because to divine that hypothetical date, courts would have to assess the effect of multiple different factors that could affect when trial would begin, such as how much time do the parties and the counsel need for factual investigation and legal analysis, how long is discovery going to take. There would be numerous questions that would arise about how to apply those factors. For example, the courts would have to decide should they take potential obstacles to an earlier trial as given, or should they instead think about whether those obstacles could be eliminated. The courts would also have to figure out what to do if the earliest possible trial date changed between when the motion was filed and when the motion was resolved. And how would they take into account other periods of time that might exclude delay, that might exclude, that might be excludable? Also, for example, say a court gets two motions filed at the same time. Trial could start in 5 days absent the motion. One motion is going to take 3 days to resolve. The other motion is going to take 4 days to resolve. What's the court supposed to do? Is one of the three-day motion excluded? Is the four-day motion excluded? Are both of the motions excluded? Does it depend on the order in which the court decides them? It just is not possible for a court to make these determinations. Kennedy, you said at the outset that things have been working fine. Of course, the whole point of the Act was to hold district judges to a pretty strict standard. And the concern is that there might be a very complex case that the judge just really wants to put off as long as possible and will continue to accept motion after motion. Is there anything I can read or consult to show that this has been working very well and that there's not a problem? Well, I can't point to anything particular, but there's been no outcry that there's been a problem from pretrial motions being filed as a attempt to extend the Speedy Trial Act deadline. The Court's been the Congress has reviewed the Speedy Trial Act's operation in the past. It made changes in 1979 to address problems that have occurred. It hasn't felt the need to address this problem since, and there's no evidence of any abuse of the automatic exclusion on the other side. Counsel, on that issue, do you accept the First Circuit's rule in U.S. v. Hood that if the government is found to be attempting to frustrate the operation of the Speedy Trial Act, that those motions and their delays won't be counted? First, Your Honor, I don't think that Hood adopted any such rule. The motion is just that qualification. It suggests that there might be that qualification. I think that the statute provides that the any pretrial motion tolls the deadline regardless of the purpose for which it's filed. But, of course, if in the unlikely event that a prosecutor did file a motion solely to extend the deadline and avoid proceeding to trial, that conduct would be sanctionable under the Act, under section 3164. Sanctionable against the government or against the government? The attorney could be sanctioned. How does that help a defendant whose speedy trial rights have been violated? Well, the Court doesn't need to put off trial just because time is excluded, Your Honor. And the Court has other mechanisms that it can use. You haven't answered my question. The rights that this statute protects are the rights to have your trial start within 70 days, absent or extended to these exclusions. If the government frustrates that and makes the trial start later, why shouldn't a defendant have the benefit of the Act and have the indictment dismissed with or without prejudice? Well, the statute provides the circumstances in which time is excludable and in which time is not, and it doesn't create an exception for certain kinds of motions. It applies to any pretrial motion. But I have to say there's been no evidence over the 30 years that anything like this is happening. And in Hood itself, the motion was filed by defense counsel, and the Court was simply saying that this is not, that that's not what's going on here. There's no suggestion that this motion is part of a process to try to frustrate the Act. The problem just hasn't arisen. Sotomayor. Counsel, I hope you won't sit down without addressing the H1F issue and explain why we shouldn't reach it, because the issue is, as I see it, one of law, not like nobles, one of discretion. And although you say it's unimportant because of the change in Rule 45, how can any criminal conviction that's inappropriate be unimportant to the defendant or insignificant enough for this Court to address the question once the case is before us? Well, the Court does decline to address questions if it doesn't consider them of sufficient importance to, general importance to warrant a review. In the case of two nobles, as one example, there are others cited in Stern and Gressman. But the reason that this issue is not of any ongoing importance is that the rule that's been amended, it now expressly applies to statutes like this one that don't specify a method for counting time. And, you know, turning to the merits of the issue also, one other point on the importance of it, the circuits all have adopted the same approach as the court of appeals  And additionally But two? How many circuits are we talking about? Two other circuits. But there aren't any that have held to the contrary. If we were to decide this based on subsection F involving the counting of 10 days, wouldn't that render our decision on anything that we had to say about subsection D a dictum? I don't think it would render it a dictum, Your Honor. The Court can address issues in whatever order it chooses to, and it doesn't mean that the decisions that you make along the way aren't precedential and binding if they're part of the rationale to get there. But we would It's not part of the rationale. The rationale for our decision would be H1D alone. And all the other discussion would be perfectly gratuitous, because we're going to set this individual free anyway, to say, well, this other thing is not a good reason to set him free, but this one is. I mean, the former is just utterly irrelevant to our decision. Well, Your Honor, the Respondent offered this argument as a ground not to grant certiorari in his brief in opposition. The Court nonetheless took the case the circuits are divided on this issue. I'm not disagreeing with you. I'm trying to help you. Well, I think you could — I'm not sure that I think that it would be impermissible for the Court to decide the issues in that order. But if you think so, and you think that that's a reason to I'm sure it's not impermissible, but I am also sure that if we do it, what we say about the ground for which we took the case would be the purest dictum. I can see how you might think so. Courts of appeals would follow it. But I'm not arguing that you should It's their fault. They shouldn't follow dictum. I'm not trying to argue you should decide the issue. We don't think you should decide the issue. Is it because, Mr. Roberts, as you pointed out, it's not a continuing problem since the amendment to Rule 45, it's calendar days, and so there's no problem. And so what you're suggesting is we would not have granted cert on that question. Exactly. You wouldn't have granted cert on the question. It's of no continuing importance. It's not going to affect cases going forward. And there's no reason for the Court to reach out and decide it. In any event, the court of appeals correctly decided the question. The statute doesn't specify whether the 10 days are calendar days or business days, and it's therefore reasonable to infer that Congress expected that the courts would interpret the provision in accordance with the counting rules that are applicable in similar criminal contexts. It may be pertinent on this question. Mr. Tinklenburg was designated for transfer to the MCC in Chicago on November 10th. How was that done? Was that done by – is that a court order or is that an administrative requirement? I believe what happened is the court ordered on the 2nd that there should be a competency examination. On the 10th, the BOP designated that the MCC would be where the competency examination would take place. So the BOP did it, not a court? Yes. And then on the 10th was, as it turns out, was a Thursday before Veterans Day, then there was Veterans Day, and November 12th and 13th were the weekend. So on the next Monday, the Marshals Service asked the Justice Transportation Service to transport the defendant. But the way these things work is that when there are intradistrict transportation, they use airlifts that go around the country. And the airlifts go, there are two flights a day, they make three stops. You seem to be getting into this. I just wanted to know if it was a court order on the 10th, and what you're telling me is the last court order before he was moved was on the 2nd. Yes. Is it right that the Rules Committee then changed it and it basically said the way the defendant here thinks it should be is that's what it should be? Isn't that what happened? Yes. Okay. Now, the Rules Committee said count calendar days. Changed the rule for Rule 45, yes. And now you think the Federal courts are right in saying, Judge, when you have a Speedy Trial Act case, look to Rule 45. Do you think that's right, too? Yes, we do. We think that they've got it. Okay. So why shouldn't this defendant whose case was on appeal get the advantage of that? Because at the time, that wasn't at the time that the transportation was done then. I know it was under a different rule. But where normally with cases where you have a new rule come in, it does apply to the advantage of the people who are then on appeal. Is there something special about this that the Federal rules don't or you're just too bad, we thought it was a really erroneous thing that they had, we used to have and we've corrected it, but just he's still on appeal, doesn't apply to him? Is there some law on that? I think that at the time, that was the method that dictated the transportation retroactively. I understand they followed the rule at the time. They've changed the rule, his case is still on appeal. Why shouldn't he get the advantage of the new rule? Because it's not a rule of law that we're talking about. It's the counting of the time, and it's impossible for a court to anticipate if you want to. I know. It wasn't anybody's fault. Why shouldn't we go back and say, do it again, and now, let's, since his case is still on appeal, it's the same question. What's the argument against doing that? Why can't we? I'm sure there's some rule out there that says we can't do this, but I want to know what it is, because it seems fair. Scalia. May I suggest that perhaps the reason not to do it is, assuming this person was treated entirely fairly on the basis of the law that existed at the time, the consequence of what Justice Breyer proposes is to set free someone who has been duly convicted of a crime. That's right. And to do that simply because, although the process was perfectly fair when it was applied, there's been a change in the rule, and therefore, we don't redo it, but we let this person go, right? And can't we try it any other reason? I agree with you completely, Your Honor. Well, I think that at the time, we were trying to do it, but we didn't do it. I mean, I'm thinking that we normally, although all this is quite true, what Justice Scalia says, normally, we do apply new rules to those who are on appeal at the time. I don't agree with that. Do you agree with that? Well, maybe. Do you agree with that? I don't think that you – I don't think that this is a new rule of law that you're talking about. This is how the – this is – is at a county method. Who wants the benefit of this new rule? Who wants the new rule? Does the government want the new rule or does the defendant want the new rule? We don't want the new rule. We're just telling you what we think the rule – what the rule means. I don't understand. Counsel, there's a lot of discussion about the applicability or non-applicability of this rule to this case. The rule by its terms applies to computing any period of time specified in these rules, any local rule, or any court order. None of that includes the statute at issue here, correct? Yes, Your Honor. Our argument is not that the rule by its terms applied. So this whole debate about whether the rule applies or not is irrelevant. The only question is what does the statute intend, correct? Yes. All right. So if what the statute intends hasn't changed between the old rule or the revised rule, correct? Congress hasn't made an amendment, correct? I like the way we're going. But I think you don't. Well, you like the way we're going if I accept your proposition that when Congress uses 10 days, it really means 10 business days. I take words in a statute like that at their plain meaning. It says 10 days, not 10 business days. So your Honor, I think that there's no plain meaning. Days sometimes can mean business days. They can sometimes mean calendar days. And as I said before. But Congress has used 10 has used business days in other provisions, hasn't it? I don't know whether it's used business days or not. Respondent does point out that there are some statutes that contain specific exclusions of weekends and holidays. But those statutes were. Yes. Ginsburg. Let's go back to the rule 40. I don't think you should have been so happy with the way the argument was going. Because your view is rule 40, it was always assumed that there would be conformity between rule 45. Rule 45, it was business days. And then rule 45 changed not only to say calendar days, but included statutes for the first time. So I think what you're saying is that the interpretation of the statute tracks with rule 45. Rule 45 formerly was a calendar, was business days, it is now calendar days. There is conformity and plus statute is in rule 45, and that was at least laid on the table of Congress, so they know that it was there. Yes, Your Honor. I think that the statute always meant the same thing, and that it meant that 10 days should be interpreted in light of whatever the background rule is at the time for counting the time. And so there is no new rule. At the time, the 10 days meant exclude the weekends and holidays. And now, because the background rule has changed, it means count the weekends and count the holidays. Sotomayor, so Congress changed its mind between the two rules? No, I don't think Congress changed its mind. Congress wanted the statute to. How do I know that? Where rule 45 doesn't apply to statutes. Well, where in the statute does it, say, apply the criminal rules? Well, I think that my point is that when it doesn't specify whether it's business or calendar days, that Congress anticipated that courts would say, okay, let's look to the background rule. And the place, the sensible place to look to the background rule is the rule, is a rule of criminal procedure in analogous context. In fact, courts frequently do that when they're trying to interpret statutes to figure out what the 10-day limit is, as many of the cases cited in the ALR article that Respondent cites show. Alito, when you're trying to figure out – when you're dealing with procedural rules that involve filing things in court, it was once thought to make sense to exclude weekends, because things couldn't be filed on the weekends. But when you're talking about transporting a prisoner, what sense does it make to exclude the weekend? Does this – do these flights of prisoners from one facility to another come to a stop when, you know, when the whistle blows on Saturday afternoon – on Friday afternoon? Yes, Your Honor. Generally, the flights don't occur on the weekends or holidays. That was sort of what I was trying to explain in my extended digression to the Chief Justice before. The BOP doesn't admit and discharge prisoners on the weekends. In addition, there are various other factors that go into the need to have two deputy marshals transporting people. So the transportation doesn't generally occur on the weekends, and it's because of the weekends and holidays that the transportation of the defendant actually took the amount of time that it did here. But I would say, as I started in urging you not to address this issue, which is of no ongoing importance, that the question that we did ask the Court to address and that the Court granted review on is a very important question that's divided the circuits and that allowing the rule that the Court below adopted to continue to stand could frustrate the application of the Speedy Trial Act, not only with respect to the pretrial motions exclusion, but potentially with respect to all the other automatic exclusions. And I think it's very important that the Court correct this error and reaffirm the established rule. If I could reserve the remainder of my time for rebuttal. Roberts. Thank you, counsel. Mr. Fisher. Mr. Chief Justice, and may it please the Court. Before turning to the substance, I'd like to, if I may, start with the procedural question that Justice Sotomayor raised and that my opponent just completed with, because I want to be sure there's no confusion on the posture of this case. In particular, this Court's precedent squarely rejects the notion that there's any history in this Court's precedent for refusing to reach an argument in this posture. In particular, in Langness v. Green, 282 U.S. 531, this Court held in 1931 that a Respondent's right to defend a judgment below on a ground that is properly preserved all along and that the lower court reached and rejected is, quote, beyond successful challenge. I'm not sure, I'm not aware of any exception from that rule in the 80 years since. Now, suppose the Petition here had simply raised one question, and that is the question of how you count time under a version of Rule 45 of the Federal Rules of Criminal Procedure that is no longer in effect and as to which there is no conflict in the circuits. How would you grade the chances of the Court taking cert on that? Well, I'll take your hypothetical, Justice Alito, but I do want to be able to correct the notion that it's of no longer continuing importance. But I'll assume that your hypothetical on that kind of a question would be cert denied. But that's never been an obstacle to reaching the question. Let me give you two things that are very important here. First is, the problem with the government's citation to Nobles is not just a distinction between discretion and law. If you look at the Solicitor General's own reply brief in that case, it pointed out that the problem with the alternative argument there was that it would give the defendant different relief. And so it was therefore subject to the cross-petition's rule. And that's the section of cert ingressment that's cited in their briefs. Those are the only two citations they have, a citation to Nobles and a citation to cert ingressment, which are all about cross-petitions in a different and when the defendant wants different relief. We want exactly the same relief. We want a dismissal on the Speedy Trial Act. So finally, even if it were somehow discretionary, and this Court were to consider in this Court, in this case, breaking from its unbroken precedent of 80 years. Let me give you one more example before I turn to the discretionary. In the Walling case in 1947, this Court reached as an alternative ground the defendant's argument that there was insufficient evidence. Now, that's sort of the quintessential uncert-worthy question, but this Court felt required to reach it because the lower court had reached it and rejected it and the defendant had preserved it all along in that case. In the Union Pacific case in 2009, I keep giving you citations, but let me just say, even if it were discretionary, you'd still want to reach it in this case. Because it's pages 18 and 19 of the Assistant Attorney General's brief, there are citations to a circuit split on this issue, and the new Rule 45 hasn't made that go away for two reasons. First is because the Assistant Attorney General's own argument now doesn't depend on Rule 45. Instead, it's that the Speedy Trial Act on its own terms counts 10 business days, not simply calendar days. And second, there continue to be decisions after the amendment of Rule 45 in which lower courts have said that this provision means only 10 business days. Let me give you one more citation, and forgive me for this because we didn't get to file a reply brief in this case on this issue. But the Zabawa case, 2010 Westlaw 307-5044, is a case from the Eastern District of Michigan last summer where the government's own filing, which we looked at on Pacer, asked the Court to apply Tinklenburg and hold that subsection F meant only 10 business days. Alito, if I could just come back to where you started before you go on to these additional points. Your argument is that if the government petitions for cert on one issue that's a legal issue on which there's a conflict in the circuits, and the Respondent in a criminal case says that the asks to have a decision below affirmed on 15 other grounds, we, and raises those in the bio, we take the case anyway. We are duty-bound to decide every one of those 15 grounds. You're not duty-bound to decide it just, Alito, but I do think under this Court's precedent, at least, you've never reversed the decision below without reaching them. So you may well affirm on the question presented or some one or two of those questions. You may also dismiss the case as improvidently granted, which happens sometimes in these circumstances. Of course, what ordinarily would happen is when the cert, when the op was filed, this Court would realize there was a serious obstacle to reaching the question that might well deny cert in the first place. But as I said, there's no decision on this Court's books, and certainly the Solicitor General hasn't pointed one, where you've reversed and reinstated a conviction or, in fact, reversed and done anything to a Respondent in these circumstances. Now, let me turn to the merits of the 10-day argument and make a few points before I'm sure the Court might want to talk about the pretrial motions issue as well. But there's a few important points to make. Now, remember, the Solicitor General has now basically abandoned the Sixth Circuit's view that Rule 45 automatically gets incorporated into the Speedy Trial Act. And now they're making the argument that Rule 45, that what Congress intended in the Speedy Trial Act was somehow for Rule 45 to operate as some background principle that, so that the meaning of the act, I guess, would wax and wane according to what Rule 45 would say. Now, there's two, two versions of this argument I can't tell which it's making. First, it could be saying that what Congress meant when it passed subsection F in 1979 was that whatever the rule is in Rule 45 right now, that's what we expect to be applied. Well, that can't possibly be the Solicitor General's argument, because in 1979, Rule 45, consistent with the traditional rule, excluded weekends and holidays only for periods of less than 7 days. That wasn't changed until 1985. So the Congress at the time, even if they had cared about Rule 45, wouldn't have thought you counted excluded weekends and holidays. So why wouldn't Congress think, we have a bunch of statutes that have times and we have a bunch that don't, and the ones that don't, they should be interpreted in tune with the Federal rule, Federal Rule 45? Fisherman, I think the much more natural reading, Justice Ginsburg, in light of the traditional rule, which is not just cited in Amjur, please understand, this is a canon of common law, traditional construction of time periods that goes back to Sutherland's treatise in 1904. There's a Second Circuit case called Muraska in 1921, 277F2727. I could cite you 20 or 30 State cases all up and down the last century. So the common law rule has always been for periods of less than 7 days — I'm sorry, for periods of more than 7 days, it's up to the legislature to expressly tell the Court to exclude weekends and holidays. And if you look at the U.S. Code, it's perfectly consistent with that common law understanding, because when Congress wanted, such as in the Bail Reform Act, to exclude weekends and holidays from a 10-day period, it expressly says so. Now, we cited three or four examples in our brief. Again, this is at page 4041 of our brief. I could have cited 15 or 20. So the U.S. Code is quite clear, and I think the much more natural inference is that — not that — is that when Congress wanted to exclude weekends and holidays consistent with the traditional rule, it felt duty-bound to say so in the U.S. Code. And when it hasn't, it wants simply calendar days. Now, you want confirmation. Ginsburg. Do you agree that under the 2009 amendment, Rule 45 includes statutes? It didn't before. Now it does. It does now. But two things are telling about the 2009 amendments. The first is, is that when it switched to statutes, it reverted to counting calendar days. Scalia. You're not relying on the 2009 amendment. You don't say that this — you say this was wrong when it was decided, and regardless of the 2009. That's right. That's right. But if you want to talk about congressional intent, I don't think you have to even go there. But remember, after the 2000 — in 2009, there's also a Federal law, the Technical Amendments Statutory Act. I've made a hash of that. But Congress went through most recently, about a year and a half ago, and amended various provisions of the U.S. Code according to whether it wanted weekends or holidays excluded or times enlarged, and it left this alone. So I think every indicia of evidence you can look at from every possible angle shows that 10 days meant 10 days at the time of the trial, and that's enough to affirm the judgment. The last point I'll make, Court, is that Congress thought about this. It thought about the Speedy Trial Act when it made those technical amendments. Isn't it likely to have thought that the courts had interpreted it as excluding the weekends up to this point? So there was not. No, my point, Justice Alito, is Congress didn't think of the Speedy Trial Act. It didn't do anything to the Speedy Trial Act. It didn't think of it, so, okay. Well, maybe it didn't. It's just we leave that where it was. But let me make one final point that I think is the clincher here. Remember, we have not just this alternative argument. We have a second alternative argument, which is that the time in relation to Mr. Hincklenburg's competency hearings exceeded the 30-day provision in Section 4247 in the Insanity Defense Reform Act. Now, I don't think you have to get to that argument. You can simply affirm on the 10-day issue. But, again, let's think about what the Solicitor General is arguing with respect to the 10-day issue. They're saying that Congress, sub silentio, without saying anything at all in the Speedy Trial Act, somehow assumed that the time in subsection F would wax and wane according to this rule. Well, if that's the case, even though the rule didn't even apply to statutes at the time, well, if that's the case, then I don't think there's any basis for arguing that Congress wouldn't have had exactly the same assumption with respect to another Federal statute, that is, the Insanity Defense Reform Act that says the 30-day time provision. Roberts. If we don't agree with you on your Rule 45 argument, you say we would have to reach this third argument, right? Yes. So I think the only way, if somehow you accepted the Solicitor General's argument, which I don't think you can, but if you did accept it on the merits, it runs headlong into our third argument, which the Solicitor General takes exactly the opposite position, which is the Speedy Trial Act is its own self-contained universe that doesn't incorporate any other statutes or any other provisions of the law. Alito, why isn't the effect of what you're doing to prompt us to dismiss this case that the petition is improvidently granted? If we were to write an opinion that says that the Sixth Circuit was wrong in its interpretation of subsection F, and therefore we're not going to get to, and anything we then had to say about subsection D is just dictum, and that's the issue that we took the case to decide, why should we keep the case at all? I think you could do that, Justice Ginsburg. I think you can decide based on my discussion of the Zabawa case. There's another case that postdates the Rule 45 amendments called Clifton out of the Southern District of Mississippi. So you might decide that there's enough of an ongoing question here to write an opinion. Ginsburg. Ginsburg. But then we would have to wait for another case to decide this issue on which there's a split, that is, the delay resulting from. What does that mean? Kennedy, I can't stand the suspense. I'd like to hear about the delay point. Right. And I think, Justice Ginsburg, as to your question, I'll just leave it to this Court's best discretion how it wants to handle that issue. Now, Justice Kennedy, let me turn to the merits. We think this is a straightforward case where the text dictates the outcome of the case. Remember, the key words in the statute are delay resulting from. And I think the ordinary meaning, in fact the only meaning of delay, is a hindrance to progress or a postponement. So I'm sorry to interrupt you so early, but what about Justice Ginsburg's point, which I understood to be there's always delay resulting from these pretrial motions, it's just that the district judge takes that into account. It says, well, I'm going to have a lot of the usual pretrial motions, so I'm going to set the trial date at this point. So that is delay, when the trial date might otherwise have been set, resulting from these pretrial motions. And then the statute goes on to tell you how you count that delay. Fisherman That's exactly our argument, Mr. Chief Justice. Our argument is there's two ways you can have delay. One is by the trial date simply being moved to accommodate the motion. The other, and this is where we agree with what the Solicitor General has said here today, as well as at page 3839 of his opening brief, delay can also, in the ordinary English language, mean that the trial date was initially set to accommodate the motions in the way you just described. But what the Solicitor General is arguing for is something much more dramatic than that. They're arguing for an exclusion of the time, even if trial date was set, irregardless of the motions, and the moment you assume. Ginsburg How would we ever know that? How would we ever know that, Mr. Fitch? I mean, a trial judge who has had a lot of criminal cases knows that there's going to be some motions as we get close to trial. But how would we know whether the judge, this particular judge, took into account the likelihood of motions in setting the trial date or didn't? Fisherman Well, ordinarily, Justice Ginsburg, remember, this is only a small subset of cases. But in those cases, ordinarily, I would think the trial judge would say on the record when the date is set. Now, if there's motion practice before there's any date that's ever set, the NACDL brief I think explains how that works in districts in the Sixth Circuit right now. Parties often stipulate or are asked to stipulate by the court. Common sense goes a long way in this scenario, Justice Ginsburg. It's obvious. Ginsburg Why would the defendant stipulate? Fisherman Pardon? Ginsburg Why would a defendant who would benefit from the clock running stipulate? Fisherman Defendants don't always benefit from the clock running, Justice Ginsburg. I think there's two reasons why they might stipulate. One is because it might simply be obvious that the motion is of sufficient weight and difficulty that it's going to consume the court's resources, so why argue something that wouldn't have a basis to begin with? But I think the NACDL brief is forthright in saying, at least at the beginning of criminal cases, often defendants find themselves wanting more time, and so, again, they don't have the incentive to argue against that. Alito How do you reconcile your argument with the situation in which a motion is pending for 30 days? So that's the period from the filing until the prompt disposition. And as a result of that motion, the trial judge says, this is caused, this is going to force me, this is going to result in 10 days' delay in the date on which the case can begin. So the trial date is pushed back 10 days. Now, in that situation, how much time is excluded? Fisherman I think the text of the statute allows you to say either 30 or 10. I think in light of this Court's Henderson decision, and perhaps I think Congress had administrability concerns in mind with that last clause, I think 30 days could be excluded. But if you disagree with me on that, and you want to have a rigid textual reading of the statute resulting from only meaning 10 days, I think that's your only other option, because if I could ask the Court, or at least direct the Court to page 6 of the Assistant Attorney General's reply brief. This is where they give, because what I think the government wants to do is pose these difficult hypotheticals and the sort of difficult question you just raised, Justice Alito, and have this Court respond by simply saying, oh, well, we're just going to throw the words delay resulting from out of the statute, because there's only two definitions, two ways to deal with it the Solicitor General offers. First, they say that delay means time. And I think ordinary, in ordinary English language, delay means something more than time. It means postponement. So then the fallback argument, this is the second paragraph on page 6, is that the recurrence that is postponed is the STA's deadline for commencing trial. And our submission is that begs the whole question. That can't possibly be right, because the whole reason that you're looking to subsection D to apply it is to ask whether you should exclude the time. And if you start with the statute says, meaning if you look at H, the beginning paragraph at H, it says, It's not talking about the delay of the trial. It's talking about the computation of the start date for the trial. So if that's what that commands you to do, doesn't — isn't only the Solicitor General's position consistent with that? It's telling you take the periods of delay and compute the date the trial must start by, by excluding those. That's the language. Fisherman, I think for two reasons, I would disagree respectfully, Justice Sotomayor. First is, I take that language to say, we're going to now tell you all the circumstances under which you exclude time. And so if any of these subsections are satisfied, you exclude the time. But the Solicitor General's argument is that you start from the premise, delay resulting from means you've already excluded the time. That's their premise. Sotomayor, H says you compute the start date of the trial, when it must start, by excluding all of these periods of delay. It's defining it for you. Fisherman, if there was delay. Maybe another example, Justice Sotomayor, on subsection 7, which is at 4A of the government's appendix, I think is another way of showing that it can't possibly — even if it weren't begging the question, it can't possibly be right. It has to be talking about the trial itself. Because this is the continuance, the ends of justice continuance section. And it says, any period of delay resulting from a continuance granted by a judge on his own motion, and blah, blah, blah, if certain criteria are met. Now, it's very clear that in that section, period of delay resulting from can't mean that we've already said that the clock has stopped, because there's an if clause that gives you certain things that have to be satisfied in order to exclude it. So I think starting with the very title of the act we're talking about, the Speedy Trial Act, and the idea of the words delay resulting from can only sensibly mean delay resulting from trial. And so I think the definition that we've given you, again, which is delay results from a trial if the trial itself is postponed or if the trial is set in a way that accommodates the motions, is the only way to give meaning to the operative words in statute. Sotomayor, So it doesn't matter how substantial and important a motion is, whether it was your motion to dismiss for Speedy Trial Act reasons, or the administrative motions here that you say really didn't require time, it doesn't matter. All that matters is keeping track from day one, the commencement of a trial, as to when the court is about to set the trial date, that it does it at the end of all of the motions. That's the only time the court can do it. The distinction between administrative and non-administrative motions, I think, doesn't matter in this case, because the trial wasn't. Sotomayor, Well, it would matter, I think, Justice Sotomayor, in a circumstance where the trial date hadn't been set yet, and then was set, and an argument might arise. Well, I think we've had this dialogue already to some degree. I didn't — I expected these kinds of motions to be filed. I knew there was going to be a suppression hearing we had to hold. Therefore, I set the trial out. That would seem to be saying this was a non-administrative matter that I had to accommodate. I don't think a trial judge — put another way, I don't think a trial judge could say, I'm setting trial date outside the 70-day deadline because I had to sign my name to that pro-habit beat table. Sotomayor, Well, actually, it happens all the time. In the Rocket Docket in Virginia, the court sets a trial date and you file whatever motions you're going to file under your theory until that last motion actually delays the trial date, none of those motions exclude time. That may well be correct, but I don't know why it would matter, because it doesn't matter until you get outside the 70 days to begin with. So it matters because the trial judges have to know what to do, and while your reading might fit the language in ordinary English better, I think it does. There's also possible to read those words delay resulting from as simply referring to a period of time. And the statute is saying these periods of time are excluded from the counting. Now, the virtue of that is just what Justice Ginsburg started with. All the trial judges know how to do it. The lawyers don't get mixed up. And the problem with what you're arguing for, in my mind, if you want to say anything more about it, do, is that it seems very unworkable to strike trying to figure out what causes what. Fisherman, Let me say a couple of things, Justice Breyer. First, with all due respect, I have to disagree with your premise that it's possible to read the statute the way the Solicitor General wants to read it. Now, I'll accept for the purposes of responding to your question, let's imagine that it were possible to read it that way. I think our rule is not as difficult to administer as you think it might be, and the Solicitor General, this has been the law in the Sixth Circuit for 17 months. They haven't pointed to a single dismissal as a result of it. Now, let me take the other side, and this brings us to the dialogue during Mr. Roberts' argument. The Solicitor General's rule isn't so easy, either, unless you simply cease caring at all about the Act. You could have a perfectly administrable rule that says every single motion, no matter what the circumstances, tolls the clock. But that's not the law in the First Circuit, for example. They've made clear, as Justice Sotomayor said, that if a motion is filed to frustrate the speedy trial clock, then we're not going to exclude it. And that makes perfect sense. I mean, look at this case. Now, I'm not going to suggest there was any ill will or bad faith in this case, but the facts of this case illustrate the problem. On August 1st, the trial date was set for August 14th. There were 14 days before the trial was going to happen. Yet there were only, even at the best reading, there were only 10 days left on the clock. So if no motions had been filed, unquestionably we'd have a Speedy Trial Act violation. So the government's whole case hinges on the fact that because it filed this purely administrative motion to bring a gun into the courtroom, a motion, I might add, that at the pretrial conference the judge had already told the government was going to be granted, so I don't know why it couldn't have been made at the moment the evidence was introduced, and one other administrative motion, then the Speedy Trial Act isn't violated. And to borrow the Solicitor General's own phrase from page 38 of his brief, that outcome bears no relation to the Act's purpose. So what you have to do to have, I think, the government's argument be at all faithful, even if it were possible under the language, have it be at all faithful with the purpose of the Act, is to have some kind of exception for motions that frustrate, motions that are pretextual, motions that are purely administrative, however it would be defined. Then you talk to the government. Ginsburg, I mean, the government had administrative motions, but you had a Speedy Trial Act motion. I would say that doesn't count either. Fisherman, Well, two things, Justice Ginsburg. First of all, we are not relying in this Court on the Speedy Trial Act motion to get us to the Speedy Trial Act violation. The two motions the government filed get you to the 70 days. And so we haven't made an argument with respect to the Speedy Trial Act. But if we had to, the argument would be, with regard to that motion, would be that it didn't delay trial. Trial had already been set. The Court said this is when we are going to trial. Trial wasn't moved. And we all went to trial. So so. Sotomayor, I don't believe I had a trial in my district court days where between the time I had the pretrial conference and the time trial started, there wasn't a slew of motions. Because that's about the time counsel tends to wake up. Okay. And decide that, really, now they've got to get ready. Why should we care whether it's an administrative motion or simply to clarify the functioning of the trial? Why should we not exclude those times? Because those motions, whether they are administrative or not, will cause the trial to go faster. Because issues that would otherwise consume the time of the court during trial are being resolved before trial. I think that might be an argument for writing the Speedy Trial Act a different way, Justice Sotomayor. But if the question is whether the motion delayed trial, and that's the question that the Speedy Trial Act requires the judge to ask and answer, then the administrative piece of paper going across the judge's desk when the judge knows ahead of time it isn't going to cause any difficulty simply doesn't delay trial. At page, I believe it's 5 or 6 of an Actal brief, they talk about pretrial conferences. And they say what happens in the Sixth Circuit right now is the judge holds the conference, as you say, counsel wakes up, and everybody and the judge says, tell me the motions you're going to file. And the counsel from both sides tell the judge what motions are going to be filed, and they discuss right then and there whether they're going to delay, whether they're going to cause some delay for trial.  I am troubled by the meaning of the ''from the filing of the motion'' of that clause. You read that, I think, to mean delay resulting from any pretrial moment not to exceed, right, the period from the filing of the motion through the conclusion of the hearing,  Isn't that right? Fisherman I think that's right, and I think that's right. Scalia Where do you get that, not to exceed? It doesn't say not to exceed. It says delay resulting from the filing of the motion. Fisherman I think the difficulty is with the word ''from'', Justice Scalia. I think it's a tough word to know exactly what transition is taking place there. But in this Court's Blote decision last term, I think what I'm the argument I'm making is perfectly consistent with that decision where it said the ''from'' clause is sort of the boundaries on when subsection D applies. If you're talking about delay that a motion caused either after the hearing or before the filing, we don't want to hear from you. But the ''from'' clause tells you that if the delay falls within those two goalposts, then it's excludable. Scalia It's a funny way to say it. It's a funny way to say it. Fisherman I don't think it's a perfect way to say it either, Justice Scalia. And I said in my dialogue with Justice Alito, I think that you could also say, especially if, with a little bit of pushing on Henderson, that resulting from actually gives you a specific time period in between those that you have to exclude. But I think that that's the best reading of the Act. And, again, it's the only one that gives meaning to the phrase ''delay resulting from''. If I might just say one or two words to circle back to where I began. Mr. Tinklenberg urges you to affirm the Sixth Circuit decision or to dismiss this case as improvidently granted. But what he urges you not to do and thinks there's no basis in precedent for doing, which is to reverse the lower court without reading the alternative arguments. And with all due respect, the 10-day argument that we preserved in our bio and we've fully made in our bottom-side brief in this case, I think is extraordinarily strong and is difficult to get around in this case for all the reasons that I've explained. So with that, I'll answer any other questions this Court has about that argument, because I think it's very important. Otherwise, I'm happy to submit the case. Roberts. Thank you, Your Honor. First, I'd like to stress that the government thinks that it's very important that the Court address the question that we raised in our cert petition and that the Court granted certiorari to answer on which there's a split in the circuits and which we believe that if it's left standing will result in serious disruption to the Speedy Trial Act. Turning to that question, a few points first. Respondent's definition of delay is plainly inconsistent with Henderson, which already holds that the period of delay that's excludable is the time between the filing of the motion and the disposition of the motion. That can't be squared with the notion that delay is the period during which trial is postponed. Second, Respondent's definition of delay gives delay a different meaning in the first part of the statute and in subsection D, where this Court's already held that it has the meaning that we suggest. Third, Respondent's test is totally unworkable because you can't tell at the time a motion is filed how much time it's going to take to resolve and whether trial is going to be postponed. District court judges have over 500 pending cases on their docket. An average district court judge, 100 of them are criminal. The court, the Speedy Trial Act cannot function if the judges are going to have to make a complex judicial determination in each case to determine whether each motion is excludable. Respondent says that NACDL says that defendants won't object or that they'll stipulate to the exclusion of time, but NACDL also says that defendants may change their mind if the case goes to trial. And if they change their mind and file motions to dismiss under the Speedy Trial Act, their prior failures to object and stipulations may very well not be binding because this Court held in Zedner that defendants can't prospectively waive the application of the Act. And Respondent's test would also throw the established way that the Speedy Trial Act has been operating for over 30 years into disarray. Turning to whether this Court has to address the alternative arguments for affirmance, Nobles plainly says that the Court has discretion not to address those issues if those issues are not independently worthy of certiorari. It doesn't base that on the fact that the argument would expand the judgment below. And the rule that it's discretionary makes sense because the contrary rule would require the Court to address numerous issues that are not important and in every case where they're raised and would also lead the Court to either dismiss writs as improvidently granted or to address only as dicta important issues on which the Court has granted certiorari. Finally. Alitoso, if given the choice between a dismissal and an affirmance with good dictum about subsection D, you would prefer the latter? Yes. I think that we would like the Court to address the issue on which cert was granted. We think it's a very important issue. We think that the courts of appeals would follow it even if it might technically be viewed as dicta. We would think that it would be an alternative holding or ratio dissendae. Thank you, counsel. The case is submitted.